Donald B. MILLER, Appellant,

v.

HEBBRONVILLE AUCTION AND COMMISSION COMPANY, Appellee.

No. 15789.

Court of Civil Appeals of Texas, San Antonio.

Nov. 16, 1977.

Robert H. Kern, III, Rankin & Kern, McAllen, for appellant.

Clyde L. Wright, Jr., Alice, for appellee.

CADENA, Chief Justice.

Plaintiff, Donald B. Miller, appeals from an order of the District Court of Jim Wells County sustaining the plea of privilege of Hebbronville Auction and Commission Company, one of two defendants below. Hebbronville Auction and Commission Company, a resident, for venue purposes, of Webb County, will be designated in this opinion as "Hebbronville." Plaintiff contends that the suit is maintainable in Jim Wells County under Subdivision 4, art. 1995, Tex.Rev.Civ. Stat.Ann. (1964).

Insofar as relevant to this appeal, plaintiff's suit sought recovery for conversion of cattle. Plaintiff alleged that on March 1, 1970, he had sold 150 head of Holstein, Guernsey, and Jersey cattle to Walter Zimmerman. Plaintiff received a promissory note in the sum of $88,750.00, secured by a security agreement, naming the cattle as collateral, executed by Zimmerman, and properly recorded by plaintiff. The note was payable in monthly installments over a period of 10 years. The monthly payments were made by Zimmerman through January 15, 1973.

In the early part of February 1973, plaintiff heard that Zimmerman had sold all of the cattle covered by the security agreement. Plaintiff alleged that the sales were made by Hebbronville and South Texas Auction Company, a resident of Jim Wells County.

In order to maintain venue in Jim Wells County as to Hebbronville, it was incumbent on plaintiff to allege and prove a cause of action against the resident defendant, South Texas Auction Company, and to allege, in his controverting affidavit, facts showing that the nonresident defendant is at least a proper party to plaintiff's suit against the resident defendant. 1 Mc-

Donald, Texas Civil Practice § 4.10.2 (II) (1965).[1]

It is undisputed that South Texas Auction Company is a resident of Jim Wells County, and the petition, which was incorporated by reference in plaintiff's controverting affidavit, clearly alleges a cause of action against the resident defendant for conversion.

■ Plaintiff here insists that he did prove a cause of action against the resident defendant. In support of this contention, plaintiff argues that the proof required at a venue hearing under Subdivision 4 is not the same "proof as will be required at trial on the merits, but only [evidence sufficient] to establish the good faith of [plaintiff] in bringing suit in the particular county." Plaintiff relies on the language in *Von Scheele v. Kugler-Morris General Contractors, Inc.*, 532 S.W.2d 375, 380–81 (Tex.Civ. App.—Dallas 1975, writ dism'd), to the effect that the purpose of the requirement that plaintiff prove a cause of action against the resident defendant "is to establish the good faith of the plaintiff in joining the resident defendant" in order to prevent the collusive or fraudulent joinder of a resident defendant in order to maintain venue against the nonresident defendant. However, such language is merely an explanation or justification for requiring proof of a cause of action against the resident defendant. It cannot be construed as a statement of the quantum of proof required. The cases firmly establish the rule that plaintiff must prove, by a preponderance of the evidence, each element of a cause of action against the resident. *Texas High School Gymnastic Coaches Ass'n v. Andrews*, 532 S.W.2d 142, 145 (Tex.Civ.App.—San Antonio 1975, no writ); 1 McDonald, Texas Civil Practice *op. cit.* § 4.10.2 (III) at 441. Plaintiff does not discharge his burden merely by showing that he believes in good faith that he has a cause of action against the resident defendant.

1. Since the alleged conversion did not take place in the county of suit, plaintiff cannot, and does not. rely on Subdivision 9, which permits

■ The evidence in this case, as set out in plaintiff's brief, may be summarized as follows:

1. When he heard that Zimmerman had sold the cattle covered by the security agreement, plaintiff went to see Zimmerman and found that none of the cattle were there. He asked Zimmerman whether the cows "were all gone," and Zimmerman replied that a "couple of them" were probably "running down in the dry pasture." Plaintiff then located 5 of the cows.

2. Plaintiff further discovered that 37 cows had been sold at Mansfield by Zimmerman and plaintiff was able to identify 9 of such cows as being cows covered by the agreement. He recovered the money for these 9 cows from Mansfield Stock Yards.

3. An examination of the records of Hebbronville and South Texas Auction Company revealed that during the years 1970, 1971, and 1972, South Texas Auction Company had sold 417 cows delivered to it for sale by Zimmerman, for a total exceeding $93,000.00. Zimmerman acquired 89 cows during 1971 and 1972 and he acquired an unspecified number of cows during February 1970.

4. Zimmerman kept the cows sold to him by plaintiff separate from the remainder of the Zimmerman herd. The remainder of the Zimmerman herd contained no Guernseys, Jerseys or brown cows, "they were all black and white and Holstein."

5. Plaintiff failed in his attempt to identify any of the cows sold by South Texas Auction because South Texas Auction refused to give him the ear tag numbers of the cows it had sold for Zimmerman. But he was able to determine that the number of Jerseys or brown cows sold corresponded to the number of Jerseys and Guernseys which he sold Zimmerman.

6. Hebbronville sold 88 cows delivered to it by Zimmerman on seven separate days during the three-year period in question. The cows sold by South Texas Auction were sold on 50 separate days. As in the case of

a suit based on a crime, offense or trespass to be brought in the county where the suit, offense or trespass was committed.

the cows sold by South Texas Auction, plaintiff was unable to identify any of the cows sold by Hebbronville as being cows covered by the security agreement.

Plaintiff states that the evidence is "certainly sufficient to raise a fact issue."

However, it is not sufficient for plaintiff to raise issues of fact concerning the existence of his cause of action against the resident defendant. His burden was to persuade the trier of fact, by a preponderance of the evidence, of the existence of all elements of a cause of action against South Texas Auction Company for conversion of the mortgaged cattle. Even if we assume that the evidence was sufficient to raise an issue of fact on the question of the identity of the cows and to support a finding that the cows were the same as those described in the security agreement, this question of fact was resolved in favor of defendant. It cannot be said that plaintiff's evidence established the identity of the cows as a matter of law. Nor do we feel justified in holding that the conclusion by the trier of fact that the cows were not the cows described in the security agreement is so against the overwhelming weight and preponderance of the evidence as to be manifestly unjust.

The judgment of the trial court is affirmed.